UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

CHARLES FRAZER

                             Plaintiff,

           -against-

DATA DEVICE CORPORATION

                           Defendant.

------------------------------------------------------------x

16 CV 6510 (JFB)(AYS)


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT


JACKSON LEWIS P.C.
*ATTORNEYS FOR DEFENDANT*
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

Attorneys of Record:
     David S. Greenhaus
     Allison E. Maue

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ......................................................................................... 1

ALLEGATIONS OF THE FIRST AMENDED COMPLAINT ............................................ 2

STANDARD OF REVIEW ................................................................................................ 3

ARGUMENT ..................................................................................................................... 5

POINT I

THE COURT SHOULD DISMISS PLAINTIFF'S FIRST CAUSE OF ACTION FOR
BREACH OF CONTRACT .................................................................................................. 5

    A.    Legal Principles Surrounding Breach of Contract Claims On A Motion To
          Dismiss............................................................................................................. 5

    B.    The Alleged Contract Here Is Too Indefinite To Support A Claim. ..................... 6

          1.    The strike price is not identified. .............................................................. 6

          2.    The number of options is indefinite. ......................................................... 7

          3.    The date on which stock options should be issued is indefinite. ............... 8

POINT II

THE COURT SHOULD DISMISS PLAINTIFF'S FIFTH CAUSE OF ACTION FOR
FRAUDULENT INDUCEMENT ........................................................................................ 9

    A.    The Court Should Dismiss Plaintiff's Fraudulent Inducement Claim Because
          It Is An Impermissible Restatement Of His Breach Of Contract Claim................. 9

    B.    The Court Should Dismiss Plaintiff's Fraudulent Inducement Claim Because
          Plaintiff Failed To Plead It With Particularity. ...................................................... 12

POINT III

THE COURT SHOULD DISMISS PLAINTIFF'S SECOND AND THIRD CAUSES OF
ACTION FOR QUANTUM MERUIT AND UNJUST ENRICHMENT .............................. 13

    A.    The Court Should Dismiss Plaintiff's Unjust Enrichment And Quantum
          Meruit Claims Because Plaintiff Received Reasonable Value For Services
          He Provided. ...................................................................................................... 14

B.      The Court Should Dismiss Plaintiff's Unjust Enrichment And Quantum Meruit Claims Because Plaintiff Failed To Plead Them With Particularity. ....... 15

C.      The Court Should Dismiss Plaintiff's Unjust Enrichment and Quantum Meruit Claims To The Extent They Are Precluded By His Breach of Contract Claim. ................................................................................................................. 16

POINT IV

THE COURT SHOULD DISMISS PLAINTIFF'S FOURTH CAUSE OF ACTION FOR PROMISSORY ESTOPPEL. .................................................................................................... 16

A.      The Court Should Dismiss Plaintiff's Promissory Estoppel Claim Because Promissory Estoppel Is Not A Valid Cause of Action In The Employment Context. .............................................................................................................. 16

B.      The Court Should Dismiss Plaintiff's Fourth Cause Of Action Because Plaintiff Fails To Properly Allege The Elements Of A Promissory Estoppel Claim. ................................................................................................................. 17

1.      There is no clear and unambiguous promise. ............................................ 17

2.      Plaintiff does not allege sufficient injury. ................................................. 18

C.      The Court Should Dismiss Plaintiff's Promissory Estoppel Claim To The Extent It Is Duplicative Of His Breach Of Contract Claim. ................................ 19

CONCLUSION ..................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Albert v. Loksen,
    239 F.3d 256 (2d Cir. 2001)...................................................................................9

Alter v. Bogoricin,
    No. 97-0662, 1997 U.S. Dist. LEXIS 17369 (S.D.N.Y. Nov. 4, 1997)....................................2

Argent Elec., Inc. v. Cooper Lighting, Inc.,
    No. 03-9794, 2005 U.S. Dist. LEXIS 18689 (S.D.N.Y. Aug. 31, 2005)..........................5, 8-9

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...................................................................................................3

Baguer v. Spanish Broad. Sys.,
    No. 04-8393, 2007 U.S. Dist. LEXIS 70793 (S.D.N.Y. Sept. 25, 2007)..........................18-19

Bell Atl. v. Twombly,
    550 U.S. 544 (2007)...............................................................................................3, 4

Celi v. Canadian Occidental Petroleum LTD.,
    804 F. Supp. 465 (E.D.N.Y. 1992) ........................................................................18

Coca-Cola N. Am. v. Crawley Juice, Inc.,
    Nos. 09-3259, 09-3260, 09-3279, 2011 U.S. Dist. LEXIS 52813 (E.D.N.Y.
    May 17, 2011).........................................................................................................12

Corsello v. Verizon New York, Inc.,
    18 N.Y. 3d 777 (N.Y. 2012) ..................................................................................13

Cortec Indus., Inc. v. Sum Holding L.P.,
    949 F.2d 42 (2d Cir. 1991)........................................................................................4

Costoso v. Bank of Am., N.A.,,
    74 F. Supp. 3d 558 (E.D.N.Y. 2015) ..............................................................16, 19

Design Partners, Inc. v. Five Star Elec. Corp.,
    No. 12-2949, 2016 U.S. Dist. LEXIS 41913 (E.D.N.Y. Mar. 29, 2016)..................13

Desilva v. N. Shore-Long Island Jewish Health Sys.,
    No. 10-134, 2012 U.S. Dist. LEXIS 30597 (E.D.N.Y. Mar. 7, 2012)......................14

Deutsch v. Kroll Assocs.,
    No. 02-2892, 2003 U.S. Dist. LEXIS 16613 (S.D.N.Y. Sept. 19, 2003)...........................16-17

eBusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC
    No. 08-09101, 2009 U.S. Dist. LEXIS 122193 (S.D.N.Y. Dec. 29, 2009) .......................10, 13

Fontana v. Potter,
    No. 01-7002, 2005 U.S. Dist. LEXIS 49932 (E.D.N.Y. Aug. 24, 2005)...........................16, 17

Gatt Commc'ns, Inc. v. PMC Assocs. L.L.C.,
    711 F.3d 68 (2d Cir. 2013)..................................................................................................3

In re Merrill Lynch & Co.,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003)................................................................................4

Kapsis v. Am. Home Mortg. Servicing Inc.,
    923 F. Supp. 2d 430 (E.D.N.Y. 2013) ...............................................................................3

Karmilowicz v. The Hartford financial Services Group,
    No. 11-539, 2011 U.S. Dist. LEXIS 77481 (S.D.N.Y. July 14, 2011) ....................................15

Kaye v. Grossman,
    202 F.3d 611 (2d Cir. 2000).............................................................................................17

Kilgore v. Ocwen Loan Servicing, LLC,
    89 F. Supp. 3d 526 (E.D.N.Y. 2015) ........................................................................ 5, 17-18

KJ Roberts & Co., Inc. v. MDC Partners,
    605 Fed. Appx. 6 (2d Cir. 2015).......................................................................................8

Knoll v. Schectman,
    275 F. Appx. 50 (2d Cir. 2008).........................................................................................4

Lacura, Inc. v. Masas U.S.A., Inc.,
    No. 15-3101, 2016 U.S. Dist. LEXIS 16550 (E.D.N.Y. Feb. 9, 2016) ....................................14

Lerner v. Fleet Bank, N.A.,
    459 F.3d 273 (2d Cir. 2006).........................................................................................4, 12

Levion v. Societe Generale,
    822 F. Supp. 2d 390 (S.D.N.Y. 2011)..........................................................................14-15

Liebowitz v. Cornell,
    584 F.3d 487 (2d Cir. 2009).............................................................................................14

LPD N.Y., LLC v. Adidas Am., Inc.
    No. 15-6360, 2016 U.S. Dist. LEXIS 115021 (E.D.N.Y. Aug. 25, 2016)..............................5, 8

Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.,
    418 F.3d 168 (2d Cir. 2005)................................................................14

Minovici v. Belkin BV,
    No. 09-5523, 2012 N.Y. Misc. LEXIS 6 (Sup. Ct. Dutchess Co. Jan. 5, 2012)............... 10-11

MLSMK Inv. Co. v. JPMorgan Chase & Co.,
    651 F.3d 268 (2d Cir. 2011)............................................................... 3-4

Nasso v. Bio Reference Labs., Inc.,
    892 F. Supp. 2d 439 (E.D.N.Y. 2012) ............................................................2, 4

Newman & Schwartz v. Asplundh Tree Expert Co.,
    102 F.3d 660 (2d Cir. 1996)................................................................14

NSI Int'l, Inc. v. Mustafa,
    No. 12-5528, 2014 U.S. Dist. LEXIS 42557 (E.D.N.Y. Feb. 25, 2014) ...................................8

Popal v. Slovis,
    No. 12-3916, 2015 U.S. Dist. LEXIS 177671 (S.D.N.Y. Apr. 27, 2015) ................................7

San Leandro Emerg. Med. Group Profit Sharing Plan v. Philip Morris Corp.,
    75 F.3d 801 (2d Cir. 1996)................................................................2

Scarpinato v. 1770 Inn, LLC,
    No. 13-0955, 2015 U.S. Dist. LEXIS 105428 (E.D.N.Y. Aug. 11, 2015)..............................14

Shemtob v. Shearson, Hammill & Co.,
    448 F.2d 442 (2d Cir. 1971)................................................................4

Sherman v. HarperCollins Publrs.,
    No.98-2809, 1998 U.S. Dist. LEXIS 11880 (S.D.N.Y. July 31, 1998) ....................................9

Silverman Partners, L.P. v. First Bank,
    687 F. Supp. 2d 269 (E.D.N.Y. 2010) ................................................................15

Tierney v. Omnicom Group,
    No. 06-14302, 2007 U.S. Dist. LEXIS 50434 (S.D.N.Y. July 11, 2007) ............................... 5-8

Valley Juice Ltd. v. Evian Waters of Fr., Inc.,
    87 F.3d 604 (2d Cir. 1996)................................................................16, 19

Waterville Inv., Inc. v. Homeland Sec. Network, Inc.,
    No. 08-3433, 2010 U.S. Dist. LEXIS 66367 (E.D.N.Y. July 2, 2010) ................................ 9-10

Watson v. Richmond Univ. Med. Ctr.,
    No. 14-1033, 2015 U.S. Dist. LEXIS 121566 (E.D.N.Y. Aug. 19, 2015)........................ 16-17

Zeising v. Kelly,
    152 F. Supp. 2d 335 (S.D.N.Y. 2001).........................................................................10

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b)...........................................................4, 9-13, 15

Federal Rule of Civil Procedure 12(b)(6) ......................................................... *passim*

Defendant Data Device Corporation ("DDC" or "Defendant"), by its attorneys, Jackson Lewis P.C., respectfully submits this memorandum of law in support of its motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss Plaintiff's First Amended Complaint for failure to state a claim upon which relief can be granted.[1]/

## PRELIMINARY STATEMENT

Plaintiff Charles Frazer ("Frazer" or "Plaintiff") brings this lawsuit seeking compensation in the form of stock option awards from his former employer.  Although Plaintiff received an offer letter, there was no agreement concerning the number of options to be awarded, when the options would be awarded, the level of performance required to obtain stock options, or even the strike price – all material terms of a stock option agreement.  Plaintiff attempts, nevertheless, to unilaterally assign his own terms to that which is missing from the alleged contract.  Specifically, he seeks an award of 200,000 stock options at a conjured strike price at a time of his choosing - all terms plainly not contained within the offer letter.  The omission of the material terms is fatal to his breach of contract claim and the Court, therefore, should dismiss the claim accordingly.

Plaintiff's promissory estoppel claim also fails, as there is no clear and unambiguous promise, the claim is unavailable in the employment context, and even if it were, Plaintiff has failed to allege he sustained a sufficient injury.  Plaintiff's fraudulent inducement, unjust enrichment, and quantum meruit claims are precluded by his breach of contract claim and, in addition, Plaintiff failed to plead them with sufficient particularity.  Finally, Plaintiff received reasonable value for the services he performed for DDC, providing yet another reason that his

---

[1]/       A copy of the First Amended Complaint is attached as Exhibit A to the Affirmation of David S. Greenhaus, dated May 4, 2017 (the "Greenhaus Aff.").

1

quantum meruit and unjust enrichment claims fail.  The Court should dismiss the First Amended Complaint in its entirety.

## ALLEGATIONS OF THE FIRST AMENDED COMPLAINT[2]/

On or about March 3, 2015, DDC made an offer of employment to Frazer. (Compl. ¶ 18).[3]/  The section of the offer letter titled "Company Options" states as follows: "As a Vice President of Data Bus [sic] Engineering, you are entitled to company options.  Based on your performance, and the approval of the Board of Directors, DDC will issue up to a maximum of 200,000 shares after six months of your start date."  (Compl. ¶ 19).

On or about March 9, 2015, Frazer accepted and executed the offer letter. (Compl. ¶ 22).[4]/  On or about March 31, Frazer began working for DDC.  (Compl. ¶ 23).  At various times between September and December, Frazer asked Vincent Buffa, DDC's President and Chief Executive Officer, about being granted an award of options.  (Compl. ¶¶ 24-29).  In response to a December request by Plaintiff, Buffa stated no options would be granted other than through DDC's regular company-wide grant of options program, which typically takes place in January of each year.  (Compl. ¶ 29).  No employees received any options in January 2016. (Compl. ¶ 32).

In our around January 2016, there were increasing discussions regarding the sale of DDC, and its parent company ILC, to TransDigm Group, Incorporated ("TGI"), and Plaintiff

---

[2]/      For purposes of this motion only, DDC accepts as true the factual allegations set forth in Plaintiff's First Amended Complaint.

[3]/      A copy of Frazer's offer letter, dated March 3, 2015, is attached as Exhibit B to the Greenhaus Affirmation.  The Court may consider the terms of the offer letter because they are referenced in, and integral to, the Complaint.  San Leandro Emerg. Med. Group Profit Sharing Plan v. Philip Morris Corp., 75 F.3d 801, 808-09 (2d Cir. 1996); Nasso v. Bio Reference Labs., Inc., 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (Bianco, J.); Alter v. Bogoricin, No. 97-0662, 1997 U.S. Dist. LEXIS 17369, at *10 (S.D.N.Y. Nov. 4, 1997) (considering Employment Agreement when ruling on 12(b)(6) motion where plaintiff failed to attach a copy because plaintiff relied heavily on its terms, which were integral to the dispute).

[4]/      All dates are 2015 unless indicated otherwise.

was "involved" with the potential sale.  (Compl. ¶¶ 31, 34).  By letter dated May 16, 2016 Plaintiff was informed that he would be awarded a $250,000 bonus in connection with the sale of DDC to TGI, subject to the closing of the sale.  (Compl. ¶ 36).  After the acquisition closed, DDC paid Plaintiff the $250,000 bonus.  (Compl. ¶ 39).

In October 2016, Frazer resigned from DDC.  (Compl. ¶ 42).  Plaintiff accepted a position with a new company in Arizona and started working there that same month.  (Compl. ¶ 43).  Plaintiff subsequently filed a Complaint with this Court on or around November 22, 2016. On March 6, 2017, Defendants moved to dismiss the Complaint.  On or about March 29, 2017, Plaintiff sought Defendant's consent to file an amended complaint, to which Defendant agreed.[5] On or about April 6, 2017, Plaintiff filed the First Amended Complaint.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'"  <u>Gatt Comme'ns, Inc. v. PMC Assocs. L.L.C.</u>, 711 F.3d 68, 75 (2d Cir. 2013) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009), quoting in turn <u>Bell Atl. v. Twombly</u>, 550 U.S. 544, 570 (2007)); <u>see also</u> <u>Kapsis v. Am. Home Mortg. Servicing Inc.</u>, 923 F. Supp. 2d 430, 438 (E.D.N.Y. 2013) (Bianco, J.).  To be plausible on its face, a complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678.

When considering whether a complaint is plausible on its face, a court "need not credit legal conclusions couched as factual statements." <u>MLSMK Inv. Co. v. JPMorgan Chase &</u>

---

[5] While Defendant consented to Plaintiff filing an amendment at this late stage, Plaintiff caused DDC and the Court to expend unnecessary time and resources as a result of him doing so.  Plaintiff had ample opportunity to amend prior to DDC filing its initial motion papers, as DDC's arguments in support of dismissal were set forth in its January 29, 2017 pre-motion letter to the Court.  Plaintiff, however, did not avail himself of this opportunity and waited until after DDC filed its motion papers to seek to amend.

Co., 651 F.3d 268, 270 (2d Cir. 2011).  Furthermore, "a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions" and "a formulaic recitation of the elements" must be disregarded.  Twombly, 550 U.S. at 555 (internal citations and quotations omitted).  In other words, if the factual allegations create no more than speculation that defendant acted unlawfully, then the motion to dismiss should be granted.  Id.

        Claims concerning fraud are subject to heightened pleading standards. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").  "[I]n order to comply with Rule 9(b), 'the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  Nasso v. Bio Reference Labs., Inc., 892 F. Supp. 2d 439, 446 (E.D.N.Y. 2012) (Bianco, J.) (quoting Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006)); accord Knoll v. Schectman, 275 F. Appx. 50, 51 (2d Cir. 2008)).  Conclusory allegations of fraud will be dismissed under Rule 9(b).  See Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971).

        In adjudicating a Rule 12(b)(6) motion, a court is entitled to consider: "facts alleged in the complaint and documents attached to it or incorporated in it by reference" and "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference." Nasso, 892 F. Supp. 2d at 446 (quoting In re Merrill Lynch & Co., 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted)), aff'd in part and reversed in part on other grounds sub nom; see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim").

## ARGUMENT

### POINT I

### THE COURT SHOULD DISMISS PLAINTIFF'S FIRST CAUSE OF ACTION FOR BREACH OF CONTRACT

Plaintiff alleges DDC breached an alleged contract by failing to grant him 200,000 stock options by September 30, 2016.  (Compl. ¶ 46).  This claim fails because the alleged contract is indefinite.

**A.**  **Legal Principles Surrounding Breach of Contract Claims On A Motion To Dismiss**

In order to state a breach of contract claim, a plaintiff must plead facts demonstrating the existence of a contract, performance under the contact by one party, breach by the other party, and resulting damages.  Kilgore v. Ocwen Loan Servicing, LLC, 89 F. Supp. 3d 526, 532 (E.D.N.Y. 2015) (Bianco, J.)  "The first element – the existence of a contract – requires an offer, acceptance, consideration, mutual assent and intent to be bound."  LPD N.Y., LLC v. Adidas Am., Inc. No. 15-6360, 2016 U.S. Dist. LEXIS 115021, at *28 (E.D.N.Y. Aug. 25, 2016) (quotations and citations omitted).  Under New York law, there is no enforceable contract unless it is sufficiently definite as to its material terms.  Id.  Therefore, "before a plaintiff may secure redress for the breach of an agreement, the promise made must be sufficiently certain and specific so that the parties' intentions are ascertainable."  Id. at *28-29 (quotations and citations omitted).

"Few principles are better settled in the law of contracts than the requirement of definiteness.  If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract."  Argent Elec., Inc. v. Cooper Lighting, Inc., No. 03-9794, 2005 U.S. Dist. LEXIS 18689, at *11 (S.D.N.Y. Aug. 31, 2005) (quotations and citations omitted); see also   Tierney v. Omnicom Group, No. 06-14302, 2007 U.S. Dist. LEXIS 50435, at *16

(S.D.N.Y. July 11, 2007) ("Under New York law, a court must determine whether a contract claim is based on a sufficiently definite offer such that its unequivocal acceptance will give rise to an enforceable contract.").

      **B.**      **<u>The Alleged Contract Here Is Too Indefinite To Support A Claim.</u>**

      Plaintiff's contract claim here suffers from nearly identical deficiencies as the plaintiff's claim in <u>Tierney</u>. As explained below, the stock option provision of the offer letter is indefinite as to the strike price of the options, the number of options, and the date on which options should be granted.

      **1.**      **The strike price is not identified.**

      In <u>Tierney</u>, the plaintiff and the employer entered into an Employment Agreement which provided for, among other things, a stock option provision. <u>Id.</u> at *2. The provision stated: "Stock Options: Initial award upon joining of 10,000 shares; shares vest over three years. Additional awards based on performance." <u>Id.</u>

      After the employment relationship ended, the plaintiff sent a notice to the employer formally exercising his stock options. <u>Id.</u> at *10. The employer refused to recognize the plaintiff's attempt to exercise the options, and the plaintiff sued, asserting several causes of action, including multiple breach of contract claims. <u>Id.</u> at *10-11. The court dismissed the plaintiff's claim that the employer breached the stock option provision of the Employment Agreement. <u>Id.</u> at *17. Critical to the analysis here, the <u>Tierney</u> court reasoned:

> The strike price, a critical element of any stock option, of the initial award is not identified. The Employment Agreement does not address what kind of performance was intended to merit additional awards, when additional awards would be given, how many shares would be granted, or what their strike prices would be. <u>Id.</u>

The court therefore concluded that "the option provision is clearly insufficient to support an action for breach of contract," and dismissed the claim accordingly. <u>Id.</u>

As in <u>Tierney</u>, the strike price, "a critical element of any stock option" is not identified in the offer letter here.   <u>Id.</u> at *17.   Plaintiff asserts he is entitled to $4.00/share "[b]ased on the valuation" (Compl. ¶ 44), but this is nothing more than Plaintiff's wish.[6] Nowhere in the offer letter is a strike price or share value indicated at all.[7]  Based on the missing strike price alone, Plaintiff's breach of contract claim fails for indefiniteness.  <u>See also</u> <u>Popal v. Slovis</u>, No. 12-3916, 2015 U.S. Dist. LEXIS 177671 (S.D.N.Y. Apr. 27, 2015) ("As price is an essential ingredient of every contract for the rendering of services, an agreement must be definite as to compensation.") (quotations and citations omitted).

The "Hypothetical Options Discussion" email Plaintiff describes in his First Amended Complaint (¶¶ 14-16) does not advance his breach of contract claim.   Instead, this communication reinforces that no agreement was formed.   As Plaintiff admits in the First Amended Complaint, Buffa stated that the terms set forth in his email are about "how a <u>typical</u> option award <u>would</u> materialize and develop," (emphasis added) confirming that the email's terms are only for "hypothetical" "discussion" and in no way indicate the actual strike price or set forth any other terms of an alleged contract.   Relying on a hypothetical email establishes there was no agreement on the material terms of any alleged contract.

**2.      The number of options is indefinite.**

Like in <u>Tierney</u>, Plaintiff's offer letter also does not indicate the number of options that would be granted.   While the offer letter places an upper limit on the number (i.e.,

---

[6]       It appears Plaintiff is confused as to the nature of the provision given his interchangeable use of the terms "shares" and "options" in the Complaint.   For example, compare Compl. ¶ 46 ("DDC is in breach ... due to failure to grant . . . options") with Compl. ¶ 48 ("Frazer is entitled to value of 200,000 shares as of the date of acquisition ... of $4.00 per share").

[7]       It is unclear what Plaintiff means when he says he is entitled to $4.00/share "based on the valuation." The $4.00 figure to which Plaintiff asserts he is entitled does not even match the $3.32 share value set forth in the "Hypothetical Options Discussion" email to which he refers in his complaint (Compl. ¶¶ 14-16), further demonstrating the arbitrariness of Plaintiff's claimed "contract" terms.

"up to a maximum of 200,000 shares"), there is no precision with regard to the number. The question of whether 1,000 or 200,000 or any number in between would fulfill Plaintiff's alleged "contract" is unanswerable. Without the number of options, there is no meeting of the minds and this Court, therefore, has no contract to enforce. See also LPD N.Y., 2016 U.S. Dist. LEXIS 115021, at *39 (granting motion to dismiss on breach of contract claims where material terms such as profit sharing numbers and quantity were missing because filling in the material terms would be "fashioning a contract, not enforcing one").

### 3.     The date on which stock options should be issued is indefinite.

Also as in Tierney, the offer letter does not contain a date certain by when the options would be issued. Instead, the offer letter states that issuance would be "after six months of your start date." (Compl. ¶ 19).[8] Absent a date of required performance, the alleged contract is missing yet another material term. See also NSI Int'l, Inc. v. Mustafa, No. 12-5528, 2014 U.S. Dist. LEXIS 42557, at *24-25 (E.D.N.Y. Feb. 25, 2014) ("In general, material terms of a contract include subject matter, price, payment terms, quantity, duration, compensation, and the dates of delivery and production.").

With multiple material terms missing, the stock option provision (which forms the basis of Plaintiff's breach of contract claim) is insufficient to support a breach of contract action, and the Court should dismiss the first cause of action. See also KJ Roberts & Co., Inc. v. MDC Partners, 605 Fed. Appx. 6, 8 (2d Cir. 2015) (affirming district court decision that contract for incentive payment was unenforceable because the parties never agreed to a material term: the method for calculating the payment); see also Argent, 2005 U.S. Dist. LEXIS 18689, at *11-12

---

[8]     Plaintiff resigned before DDC issued him any options.  (Compl. ¶ 42).

(an agreement "in which there is no way to tell from the face of the document how to establish missing material terms is unenforceable") (quotations and citations omitted).

        In any event, Plaintiff's employment with DDC was at will (nor does Plaintiff allege otherwise) and, therefore, DDC could change the terms of the offer letter at any time.  See Greenhaus Aff., Exh. B; Albert v. Loksen, 239 F.3d 256, 264 (2d Cir. 2001) ("New York has a well-established at will employment doctrine: Absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party."); Sherman v. HarperCollins Publrs., No. 98-2809, 1998 U.S. Dist. LEXIS 11880, at *9 (S.D.N.Y. July 31, 1998) ("The hallmark of an employment-at-will relationship is that the employer is free to modify the terms of the employee's employment, subject only to the employee's right to leave his employment if he found the terms unacceptable.").  Accordingly, the Court should dismiss Plaintiff's First Cause of Action for breach of contract.

**POINT II**

**THE COURT SHOULD DISMISS PLAINTIFF'S FIFTH
CAUSE OF ACTION FOR FRAUDULENT INDUCEMENT**

        Plaintiff's fraudulent inducement claim should be dismissed because (1) it is an impermissible restatement of his breach of contract claim; and (2) Plaintiff did not plead fraud with particularity, as required by Federal Rule of Civil Procedure 9(b).

**A.**     **The Court Should Dismiss Plaintiff's Fraudulent Inducement Claim Because
It Is An Impermissible Restatement Of His Breach Of Contract Claim.**

        New York law "requires that a fraud claim, raised in a case that stems from a breach of contract, be sufficiently distinct from the breach of contract claim." Waterville Inv., Inc. v. Homeland Sec. Network, Inc., No. 08-3433, 2010 U.S. Dist. LEXIS 66367, at *16 (E.D.N.Y. July 2, 2010) (Bianco, J.) (citations and quotations omitted).  "Therefore, under New York law where a fraud claim arises out of the same facts as plaintiff's breach of contract claim, with the

addition only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Id. at *17 (citations and quotations omitted); see also Zeising v. Kelly, 152 F. Supp. 2d 335 (S.D.N.Y. 2001) (dismissing fraudulent inducement claim where plaintiff merely "dressed up" his breach of contract claim by alleging that defendant had no intention of performing the contract).

New York only recognizes a claim for fraudulent inducement alongside a breach of contract claim when a plaintiff: "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." Waterville, 2010 U.S. Dist. LEXIS 66367, at *16.

Here, Plaintiff does not allege any separate legal duty apart from the offer letter. Nor does he allege a fraudulent misrepresentation collateral to the contract. To the contrary, Plaintiff points only to the offer letter. He alleges that "DDC, through its March 3, 2015 offer of employment ... represented to Frazer that he would be awarded shares six months after his start date at DDC," and that "DDC knew these statements were false when it made this representation to Frazer." (Compl. ¶¶ 73, 74). This is precisely the type of fraud claim that "mirrors a breach of contract claim" and, accordingly, it should be dismissed. See eBusinessware, Inc. v. Tech. Servs. Grp. Wealth Mgmt. Sols., LLC, No. 08-09101, 2009 U.S. Dist. LEXIS 122193, at *28 (S.D.N.Y. Dec. 29, 2009) ("Under New York law, a fraud claim that mirrors a breach of contract claim will not ordinarily stand.").

Plaintiff cannot salvage his fraudulent inducement claim by pointing to costs associated with moving from Massachusetts to New York, and calling such costs "special damages." (Compl. ¶ 76). See Minovici v. Belkin BV, No. 09-5523, 2012 N.Y. Misc. LEXIS 6

(N.Y. Sup. Ct. Dutchess Co. Jan. 5, 2012), aff'd in part and modified in part, 2013 N.Y. App. Div. LEXIS 5536 (App. Div. 2d Dep't, Aug. 14, 2013).

In Minovici, the plaintiff sought to recover for damages he suffered as a result of, among other things, breach of contract and fraud. Id. at ***1. The plaintiff had entered into an at-will employment agreement that required him and his family to relocate from Dutchess County, New York to the Netherlands. Id. Subsequent to relocating to the Netherlands, but prior to the scheduled start of his employment, the plaintiff was notified that the position he had been hired to fill no longer was available, effectively terminating his employment. Id. at ***2. The plaintiff claimed he was fraudulently induced to enter into the contract and contended that his damages for moving should have been considered separate and distinct from the breach of contract damages. Id. at ***7-8. The court disagreed, holding that the relocation costs were "based on the same injury allegedly suffered as a result of Defendant's breach of contract." Id. at ***8. The court, therefore, dismissed the plaintiff's fraudulent inducement claim. Id.

Like the plaintiff in Minovici, Plaintiff here asserts that he was fraudulently induced to work for DDC and that his moving costs serve as a basis to support his fraudulent inducement claim. As the Second Department held, this Court should dismiss this claim because Plaintiff's alleged injury of relocation costs is not separate and distinct from the damages related to his breach of contract claim.

Furthermore, the offer letter makes it abundantly clear that Plaintiff was to be reimbursed for his moving expenses. (Greenhaus Aff., Exhibit B, p.2) ("Data Device Corporation will cover your relocation costs from Bolton, MA to Bohemia, NY."). Plaintiff simply has no damages from moving (although it still is an open question whether his resignation requires him to reimburse DDC for his moving costs, as per his offer letter), and therefore is precluded from arguing that he has "special damages" that may permit him to plead his fraudulent inducement

claim along with his breach of contract claim. Because Plaintiff's fraudulent inducement claim is merely a restatement of his breach of contract claim, the Court should dismiss his fraudulent claim.

**B.      The Court Should Dismiss Plaintiff's Fraudulent Inducement Claim Because Plaintiff Failed To Plead It With Particularity.**

In the Second Circuit, in order to plead fraud with particularity, a party must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006) (citations omitted). In addition to stating the "what, who, where, and when" of the allegedly fraudulent statements, a plaintiff alleging fraudulent inducement must show that the defendant exhibited fraudulent intent, for which "there must be some factual basis for conclusory allegations." Coca-Cola N. Am. v. Crawley Juice, Inc., Nos. 09-3259, 09-3260, 09-3279, 2011 U.S. Dist. LEXIS 52813, at *12 (E.D.N.Y. May 17, 2011). Plaintiff "must allege facts that give rise to a strong inference of fraudulent intent." Id.

In support of his fraudulent inducement claim, Plaintiff alleges that "DDC, through its President and Chief Executive Office [sic], Buffa, made materially false statements to induce Frazer to accept an offer of employment at DDC." (Compl. ¶ 72). The First Amended Complaint, however, does not allege that a single statement outside the offer letter was fraudulent.

Furthermore, Plaintiff has not alleged any facts that create any inference of fraudulent intent. Plaintiff alleges only that DDC knew its representations contained in the offer letter were "false when it made [its] representations to Frazer, as evidenced by DDC's policy to only award stock options at the beginning of the calendar year." (Compl. ¶ 74). This allegation is wrong. There was nothing "false," let alone knowingly false, about the proposed timing of the issuance of shares as set forth in the letter. By its plain terms, the offer letter does not provide for

the issuance of shares at the six month mark; instead it provides for the <u>potential</u> issuance of shares "after six months of your start date." (Compl. ¶ 19) ("Based on your performance, and the approval of the Board of Directors, DDC will issue up to a maximum of 200,000 shares after six months of your start date."). Tellingly, this is Plaintiff's only attempt at alleging fraud.

Plaintiff has not alleged any "false representations of present fact [that would] give rise to a separable claim of fraudulent inducement" and, accordingly, the Court should dismiss his fraudulent inducement claim. See <u>eBusinessware, Inc.</u>, 2009 U.S. Dist. LEXIS 122193 at *31-32 (failing to survive a motion to dismiss where claim for fraudulent inducement did not satisfy the requirements of Rule 9(b), and where the allegations failed to "set forth a basis to distinguish an alleged act of fraudulent inducement from a garden-variety breach of contract claim").

## <u>POINT III</u>

### <u>THE COURT SHOULD DISMISS PLAINTIFF'S SECOND AND THIRD CAUSES OF ACTION FOR QUANTUM MERUIT AND UNJUST ENRICHMENT</u>

The Court should dismiss Plaintiff's unjust enrichment and quantum meruit claims because: (1) Plaintiff fails to properly allege the elements of unjust enrichment and quantum meruit; (2)  Plaintiff did not plead the claims with particularity; and (3) Plaintiff's breach of contract claim precludes them.

As the New York Court of Appeals has recognized, unjust enrichment "is not a catchall cause of action to be used when others fail." <u>Corsello v. Verizon New York, Inc.</u>, 18 N.Y.3d 777, 790 (N.Y. 2012) (citations and quotations omitted).  Rather, it is "available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." <u>Id.</u>; <u>see also</u> <u>Design Partners, Inc. v. Five Star Elec. Corp.</u>, No. 12-2949, 2016 U.S. Dist. LEXIS 41913, at *25 (E.D.N.Y. Mar. 29, 2016) (same).

**A.**     **The Court Should Dismiss Plaintiff's Unjust Enrichment And Quantum Meruit Claims Because Plaintiff Received Reasonable Value For Services He Provided.**

To establish a claim for unjust enrichment, Plaintiff must allege: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Liebowitz v. Cornell Univ., 584 F.3d 487, 509 (2d Cir. 2009); Lacura, Inc. v. Masas U.S.A., Inc., No. 15-3101, 2016 U.S. Dist. LEXIS 16550, at *41 (E.D.N.Y. Feb. 9, 2016). [9/]

The First Amended Complaint does not allege Plaintiff rendered any services to DDC that were beyond the scope of his duties, an omission that is fatal to his unjust enrichment and quantum meruit claims. Scarpinato v. 1770 Inn, LLC, No. 13-0955, 2015 U.S. Dist. LEXIS 105428 (E.D.N.Y. Aug. 11, 2015) (where "Defendants compensated Plaintiff, and Plaintiff ha[d] offered no evidence to suggest that she performed work outside of the role for which she was compensated . . . [Plaintiff] cannot be said to have unjustly enriched Defendants); see also Levion v. Societe Generale, 822 F. Supp. 2d 390 (S.D.N.Y. 2011), aff'd, 2012 U.S. App. LEXIS 23835 (2d Cir. Nov. 20, 2012).

In Levion, the plaintiff sued his former employer alleging, inter alia, breach of contract and unjust enrichment. Id. at 392.   In relevant part, the plaintiff claimed his former employer was unjustly enriched as a result of retaining the benefit of the plaintiff's services without paying him certain bonus payments. Id. at 405.   The court dismissed the claim, finding that "the law is clear that a plaintiff may not allege that his former employer was unjustly

---

[9/]        In New York, a court may analyze unjust enrichment and quantum meruit together as a single quasi-contract claim. Desilva v. N. Shore-Long Island Jewish Health Sys., No. 10-134, 2012 U.S. Dist. LEXIS 30597, at *33, FN12 (E.D.N.Y. Mar. 7, 2012) (Bianco, J.) (finding that the two claims "are not separate causes of action under New York law, but are instead conceptualized as different facets of a single quasi contract cause of action and should be treated as such").See also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp., 418 F.3d 168, 175 (2d Cir. 2005) ("[a]pplying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim") (citing Newman & Schwartz v. Asplundh Tree Expert Co., 102 F.3d 660, 663 (2d Cir. 1996)).

enriched at his expense when the employer compensated the plaintiff by paying him a salary".
Id. (citations and quotations omitted).  In reaching its decision, the Levion court relied on
Karmilowicz v. The Hartford Financial Services Group, which similarly found that "[i]ncentive
compensation was awarded at [the employer's] discretion to reward exceptional employees by
supplementing their salaries — not to compensate them for services performed."  No. 11-539,
2011 U.S. Dist. LEXIS 77481, at * 31-32 (S.D.N.Y. July 14, 2011).

      Like the unsuccessful plaintiffs in Levion and Karmilowicz, Plaintiff here
performed services for DDC within the scope of his employment as a DDC employee.  He
received compensation for such services in the form of base salary (over $17,000 per month) and
a discretionary bonus ($250,000).  (Compl. ¶ 36; Greenhaus Aff., Exh. B).  Plaintiff has not
indicated that the services he provided to DDC exceeded the scope of his duties at DDC.  On
these facts, Plaintiff fails to state a claim for unjust enrichment or quantum meruit as a matter of
law.

**B.**     **The Court Should Dismiss Plaintiff's Unjust Enrichment And Quantum**
        **Meruit Claims Because Plaintiff Failed To Plead Them With Particularity.**

      Furthermore, Plaintiff's unjust enrichment and quantum meruit claims fail
because they are not plead with specificity.  As set forth in section II.B, above, a party alleging
fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).
This requirement applies to claims of fraud, intentional misrepresentation, negligent
misrepresentation, constructive fraud, and unjust enrichment.  Silverman Partners, L.P. v. First
Bank, 687 F. Supp. 2d 269, 288 (E.D.N.Y. 2010) ("[U]njust enrichment must be pled with
specificity when the underlying acts are allegedly fraudulent.").  Because Plaintiff also has not
plead his claims with specificity (as set forth in detail in section II.B above), his unjust
enrichment and quantum meruit claims (along with his fraud claim) must be dismissed.

**C.**   **The Court Should Dismiss Plaintiff's Unjust Enrichment and Quantum Meruit Claims To The Extent They Are Precluded By His Breach of Contract Claim.**

In the event the Court does not dismiss Plaintiff's breach of contract claim, the Court should dismiss Plaintiff's unjust enrichment and quantum meruit claims because the claims are duplicative of his breach of contract claim.  Under New York law, the "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Valley Juice Ltd. v. Evian Waters of Fr., Inc., 87 F.3d 604, 610 (2d Cir. 1996); Costoso v. Bank of Am., N.A., 74 F. Supp. 3d 558, 574 (E.D.N.Y. 2015).    A finding by this Court that Plaintiff's breach of contract claims survive this motion, therefore, would preclude Plaintiff from stating any quasi-contract claim, whether one for unjust enrichment, quantum meruit, or promissory estoppel.

**POINT IV**

**THE COURT SHOULD DISMISS PLAINTIFF'S FOURTH
CAUSE OF ACTION FOR PROMISSORY ESTOPPEL**

Plaintiff's promissory estoppel claim should be dismissed because (1) New York does not recognize promissory estoppel as a valid cause of action when raised in the employment context, (2) Plaintiff has not properly alleged the elements of a promissory estoppel claim, and (3) it is duplicative of his breach of contract claim.

**A.**   **The Court Should Dismiss Plaintiff's Promissory Estoppel Claim Because Promissory Estoppel Is Not A Valid Cause of Action In The Employment Context.**

"New York does not recognize promissory estoppel as a valid cause of action when raised in the employment context." Fontana v. Potter, No. 01-7002, 2005 U.S. Dist. LEXIS 49932, at *16 (E.D.N.Y. Aug. 24, 2005); see also Watson v. Richmond Univ. Med. Ctr., No. 14-1033, 2015 U.S. Dist. LEXIS 121566, at *13-14 (E.D.N.Y. Aug. 19, 2015) (denying motion to amend and dismissing promissory estoppel claim because New York law does not

16

recognize a promissory estoppel claim in the employment context); <u>Deutsch v. Kroll Assocs.</u>, No. 02-2892, 2003 U.S. Dist. LEXIS 16613, at *7 (S.D.N.Y. Sept. 19, 2003).

In <u>Deutsch</u>, in relevant part, the plaintiff asserted against his former employer claims for promissory estoppel for failure to pay him promised wages and benefits. <u>Id.</u> at *5. The court, however, dismissed those claims because "New York law, which here governs, does not recognize promissory estoppel in the employment context." <u>Id.</u> at *8.

As in <u>Deutsch</u>, because New York courts do not apply the doctrine of promissory estoppel in the employment context, Plaintiff may not maintain a claim of promissory estoppel based on an alleged "promise[d] an award of 200,000 shares six months after he started at DDC." (Compl. ¶ 66). For this reason alone, even if Plaintiff had properly alleged each element of promissory estoppel – which he did not, as explained below – his claim of promissory estoppel is futile.

**B.  The Court Should Dismiss Plaintiff's Fourth Cause Of Action Because Plaintiff Fails To Properly Allege The Elements Of A Promissory Estoppel Claim.**

Even assuming, however, the doctrine of promissory estoppel was available in the employment context, Plaintiff's allegations nevertheless fail to state a plausible claim for relief. In order to state a claim for promissory estoppel, a plaintiff must demonstrate reasonable detrimental reliance upon a clear and unambiguous promise. <u>Kaye v. Grossman</u>, 202 F.3d 611, 615 (2d Cir. 2000); <u>Fontana v. Potter</u>, No. 01-7002, 2005 U.S. Dist. LEXIS 49932, at *14-15 (E.D.N.Y. Aug. 24, 2005). Plaintiff failed to make these allegations.

**1.  There is no clear and unambiguous promise.**

"A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel; the alleged promise must be clear and unambiguous." <u>Kilgore v. Ocwen Loan Servicing, LLC</u>, 89 F. Supp. 3d 526, 534 (E.D.N.Y. 2015) (Bianco, J.) (internal quotations

and citation omitted).  Plaintiff claims that his offer letter was a "written promise of an award of 200,00 share six months after he started at DDC." (Compl. ¶ 66).  But this is refuted by the offer letter itself.  As previously discussed (see section I, above), the offer letter provides no strike price for the shares, no set number of shares, and no date on which shares should be issued.  Given the litany of missing material terms, Plaintiff has not alleged a "clear and unambiguous" promise on which to base his promissory estoppel claim.

### 2.    Plaintiff does not allege sufficient injury.

Furthermore, Plaintiff does not allege sufficient injury to sustain a claim for promissory estoppel.  Plaintiff claims he "relied upon the promised award of stock options six months after his start date at DDC to convince his wife to give up her job as a teacher in Massachusetts." (Compl. ¶ 42).  However, courts in New York have held that changing employment is insufficient to establish the injury requisite to a promissory estoppel claim.  Celi v. Canadian Occidental Petroleum LTD., 804 F. Supp. 465, 471 (E.D.N.Y. 1992) ("inducing an individual to leave his current position through an offer of a different position and certain benefits does not constitute an unconscionable injury worthy of promissory estoppel"); see also Baguer v. Spanish Broad. Sys., No. 04-8393, 2007 U.S. Dist. LEXIS 70793, at *21 (S.D.N.Y. Sept. 25, 2007).[10]

In Baguer, the plaintiff alleged that the employer promised to pay him commissions and benefits, in addition to the assignment of certain accounts.  2007 U.S. Dist. LEXIS 70793, at *3.  The plaintiff claimed that he relied on the employer's promises by staying at his employment there and as a consequence "suffered substantial economic damages".  Id. at *14.  The court in Baguer dismissed the plaintiff's claims, relying on the law in New York

---

[10] In Celi, the issue of whether promissory estoppel applies in the employment context was not before the court.

holding that "changing, or failing to change, one's employment is insufficient to establish the injury requisite to a promissory estoppel claim . . . unless the plaintiff's rights under the previous situation, or missed opportunity, were so valuable that injury of unconscionable proportions would flow from the failure to enforce the alleged contract." Id. at *15-16 (quotations and citations omitted).[11]

Even assuming, contrary to the weight of authority in this Circuit, that promissory estoppel is applicable in the employment context, Plaintiff's change in employment – let alone *his wife's* change in employment - is insufficient injury to trigger a promissory estoppel claim. Therefore, like the plaintiff in Baguer, Plaintiff's alleged injuries cannot provide the foundation for a promissory estoppel claim under New York law.  For this reason, and because there is no clear and unambiguous promise, Plaintiff's promissory estoppel claim should be dismissed.

**C.     The Court Should Dismiss Plaintiff's Promissory Estoppel Claim To The Extent It Is Duplicative Of His Breach Of Contract Claim.**

As set forth in section III.C, above, just as with Plaintiff's unjust enrichment and quantum meruit claims, in the event the Court does not dismiss Plaintiff's breach of contract claim, the Court should dismiss Plaintiff's promissory estoppel claim because it is duplicative of his breach of contract claim.  Under New York law, the "existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Valley Juice Ltd. v. Evian Waters of Fr., Inc., 87 F.3d 604, 610 (2d Cir. 1996); Costoso v. Bank of Am., N.A., 74 F. Supp. 3d 558, 574 (E.D.N.Y. 2015).

---

[11] The court's holding was made only after assuming that promissory estoppel was applicable, noting that "courts within the Second Circuit have held that New York does not recognize promissory estoppel as a valid cause of action in the employment context." Id. at *17 (citations and quotations omitted).

## CONCLUSION

For the foregoing reasons, the Court should grant DDC's motion to dismiss

Plaintiff's First Amended Complaint in its entirety, and with prejudice.

Dated: Melville, New York
     May 7, 2017

                             Respectfully submitted,

                             JACKSON LEWIS P.C.
                             *ATTORNEY FOR DEFENDANT*
                             58 S. Service Road, Suite 250
                             Melville, New York 11747
                             (631) 247-0404

By:                           
                             DAVID S. GREENHAUS
                             ALLISON E. MAUE

4832-3247-8279, v. 2