## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

CHARLES FRAZER

                          Plaintiff,

        v.                                 16 CV 6510 (JFB)(AYS)

DATA DEVICE CORPORATION

                          Defendant

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Law Office of Ethan A. Brecher, LLC
600 Third Avenue, 2nd Floor
New York, NY 10016
Phone: (646) 571-2440
Fax: (888) 821-0246

*Attorney for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF RELEVANT FACTS ............................................................................. 1

   A.  Frazer's Original Complaint ....................................................................................... 1

   B.  The Parties Begin Discovery ....................................................................................... 3

   C.  Frazer's Proposed Second Amended Complaint ................................................... 5

ARGUMENT ........................................................................................................................... 6

   A.  Frazer Has Shown Good Cause to Amend the Complaint.................................... 7

   B.  DDC Cannot Show Prejudice, Bad Faith, or Futility........................................... 9

      1.  Frazer Has Acted in Good Faith and Moved to Amend the Complaint Rapidly.......... 9

      2.  Allowing Frazer Amend the Complaint Would Not Cause Undue Delay or Unfairly Prejudice DDC ........................................................................................ 10

      3.  Frazer's Amendments to the FAC Are Not Futile..................................... 12

         a.  New York Labor Law § 193 .................................................................. 13

         b.  Addition of ILC as a Party .................................................................... 15

CONCLUSION....................................................................................................................... 19

# TABLE OF AUTHORITIES

**Cases**

*A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281 (S.D.N.Y. 2000) ................ 12

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 2018 WL 1273343

(S.D.N.Y. Mar. 5, 2018) ................................................................................................. 18

*Addison v. Reitman Blacktop, Inc.*, 283 F.R.D. 74  (E.D.N.Y. 2011) ......................................... 16

*Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566 (2d Cir. 2005) .................... 6

*Aledia v. HSH Nordbank AG*, 2009 WL 855951  (S.D.N.Y. Mar. 25, 2009) .............................. 15

*Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193 (2d Cir. 2005) ....................................... 16

*Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400  (E.D.N.Y. 1995) ................................. 7

*Avelar v. Ed Quiros*, Inc., 2015 WL 1247102 (E.D.N.Y. Mar. 18, 2015) ................................... 16

*Beach v. HSBC Bank USA, N.A.*, 2017 WL 5633162  (S.D.N.Y. Nov. 20, 2017) ...................... 13

*Block v. First Blood Assocs.*, 988 F.2d 344 (2d Cir.1993) ......................................................... 11

*Bridgeport Music Inc. v. UMG Recordings. Inc.*. 2008 WL 113672 (S.D.N.Y. Jan. 10, 2008 .... 11

*Chrebet v. Cty. of Nassau*, 2014 WL 1836835  (E.D.N.Y. May 8, 2014) ..................................... 7

*Cummings-Fowler v. Suffolk County Community College*, 282 F.R.D. 292 (E.D.N.Y. 2012) ..... 12

*Dean Witter Reynolds, Inc. v. Ross,* 75 A.D.2d 373 (1st Dep't 1980) ......................................... 14

*Fletcher v. Atex, Inc.*, 68 F.3d 1451 (2d Cir. 1995) .................................................................... 18

*Friedl. v. City of New York*, 210 F.3d 79 (2d Cir. 2000) .............................................................. 7

Grochowski v. Phoenix Constr., 318 F.3d 80 (2d Cir.2003) ........................................................ 11

*Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629 (E.D.N.Y. 2017) ................................................ 16

*Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119 (E.D.N.Y. 2003) .............................. 9

*Joinnides v. Floral Park-Bellerose Union Sch. Dist.*, 2015 WL 1476422 (E.D.N.Y. Mar. 31, 2015) ............................................................................................................. passim

*Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100 (2018) ......................................................... 15

*Lincoln v. Potter*, 418 F.Supp.2d 443 (S.D.N.Y. 2006) ............................................................. 6, 8

*Locke v. Tom James Co.*, 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013) ............................... 13, 14

*Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392 (S.D.N.Y. 2013) ............................................................................................................. 17, 18

*NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168 (2d Cir. 2008) ............................. 17

*Oneida Indian Nation of New York State v. County of Oneida*, 199 F.R.D. 61 (N.D.N.Y. 2000) . 9

*Parker v. Columbia Pictures Industries*, 204 F.3d 326 (2d Cir. 2000) ................................ 6, 7, 10

*Quattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educational Services*, 2011 WL 294496 (W.D.N.Y. 2011) ........................................................................................... 8

*Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230  (2d Cir. 1995) .................................... 10

*Raji v. Societe Generale Americas Sec. LLC*,  2016 WL 354033  (S.D.N.Y. Jan. 21, 2016) ......... 6

*Richardson v. Greenshields Securities, Inc. v. Lau*, 825 F.2d 647 (2d Cir. 1987) ...................... 10

*Ryan v. Kellogg Partners Institutional Services*, 968 N.E.2d 947 (2012) ................................... 15

*Salomon v. Adderley Indus., Inc.*, 960 F. Supp. 2d 502 (S.D.N.Y. 2013) ..................................... 7

*Samad Bros. v. Bokara Rug Co.*, 2010 WL 2835754  (S.D.N.Y. June 30, 2010) ......................... 8

*Securities and Exchange Commission v. PCI Telecommunications, Inc.*, 207 F.R.D. 32 (S.D.N.Y. 2002) ............................................................................................................. 10

*State Trading v. Assuranceforeningen Skuld*, 921 F.2d 409 (2d Cir.1990) ................................ 10

*Sullivan ex rel. Pointer, Cleaners & Caulkers Welfare Pension & Annuity Funds v. W. New York Residential, Inc.*, 2003 WL 21056888 (E.D.N.Y. Mar. 5, 2003) ............................................. 18

*Truelove v. Northeast Capital & Advisory, Inc.,* 95 N.Y.2d 220  (2000) ...................................... 14

*Trustees of Laborers Union Local No. 1298 of Nassau & Suffolk Ctys. Ben. Funds v. A to E, Inc.,*

    64 F. Supp. 3d 435 (E.D.N.Y. 2014) .................................................................. 18

*Tuttle v. George McQuesten Co. Inc.,* 227 AD2d 754 (3d Dep't 1996) ...................................... 15

*UMG Recordings, Inc. v. Lindor*, 2006 WL 3335048 (E.D.N.Y. Nov. 9, 2006).......................... 12

Werking v. Andrews, 526 Fed. Appx. 94 (2d. Cir.2013) ............................................................ 11

*Yin v. N. Shore LIJ Health Sys.,* 20 F.Supp.3d 359  (E.D.N.Y.2014)........................................... 13

## Statutes

New York  Labor Law § 190(1) .................................................................................................... 13

New York Labor Law § 193 ........................................................................................................... 13

## Rules

Fed. R. Civ. P. 15 (a) ..................................................................................................................... 6

Fed. R. Civ. P. 16(b) ...................................................................................................................... 6

Fed. R. Civ. P. 21 ........................................................................................................................... 6

## PRELIMINARY STATEMENT

Plaintiff Charles Frazer ("Plaintiff" or "Frazer") respectfully moves for leave to amend his Complaint based upon information he obtained during the course of discovery. This information which was not known or knowable to Frazer prior to discovery was produced by Defendant Data Device Corporation ("DDC") after the deadline to move to amend the pleadings or join new parties.  Frazer reviewed the documents he received from DDC and almost immediately sought permission from the Court to file the instant motion.  Frazer is seeking leave to add a claim for a violation under New York Labor Law ("NYLL") § 193 against DDC after discovering documents which show that Frazer's award of company options was fully vested and payable in cash in June 2016.  Frazer is also seeking to add DDC's parent company ILC Holdings, Inc. ("ILC") as a new party.  ILC's level of involvement in DDC's affairs makes it liable for the NYLL § 193 violation, and for the breach of Frazer's employment contract and under  quantum meruit and unjust enrichment.

As set forth below, Frazer has established the requisite "good cause" required to permit him to amend the complaint under Fed. R. Civ. P. 16.   As DDC cannot demonstrate that there is any undue delay, undue prejudice, bad faith or futility, Frazer's motion to amend the Complaint and add ILC as a party should be granted under Fed. R. Civ. P. 15 and 21.

## STATEMENT OF RELEVANT FACTS

### A.  Frazer's Original Complaint

Frazer commenced this action on November 22, 2016 and filed a first amended complaint on April 6, 2017 (the "FAC") (Declaration of Ethan A. Brecher "Brecher Decl." at Ex. A). Frazer filed suit in order to enforce DDC's contractual obligation to grant him up to 200,000 company options. The parties engaged in negotiations prior to the execution of the contract and

DDC's Chief Executive Offer Vincent Buffa ("Buffa") provided Frazer with DDC's methodology for calculating the value of an award of company options/shares, giving Frazer an approximate valuation of the award of shares.  Frazer was also aware during the negotiations that Behrman Capital ("Behrman"), which owned ILC (DDC's parent), was looking to sell DDC.  As such, the award of options/shares in DDC and their valuation was a vital element of Frazer's overall compensation package at DDC. (FAC ¶¶ 9-10).  Frazer received an offer of employment from DDC on March 3, 2015 ("the Employment Contract"), which stated "As a Vice President of Data Bus Engineering, you are entitled to company options. Based on your performance, and the approval of the Board of Directors, DDC will issue up to a maximum of 200,000 shares after six months of your start date."  (FAC ¶ 19).  Frazer executed the Employment Contract and began work at DDC on March 31, 2015.

Frazer never receive this award of options from DDC, including in September of 2015, six months after he started at DDC, or on January 1, 2016, which Buffa told him was when the company options would be issued, or after Transdigm Group Incorporated ("TDG") completed its acquisition of ILC, which took place on June 23, 2016.  Frazer was unaware of why he was denied his contractually bargained for award of company options.  He resigned from DDC in October of 2016.  (FAC ¶ 42).

The FAC alleged causes of action sounding in breach of contract, quantum meruit, unjust enrichment, promissory estoppel and fraudulent inducement. DDC moved to dismiss the FAC entirely and the Court denied DDC's motion on February 1, 2018 with respect to the breach of contract and quasi-contract causes of action.  (Brecher Decl.at ¶ 3-4).

**B.  The Parties Begin Discovery**

DDC submitted its Answer on March 8, 2016.  The parties then submitted a Discovery

Worksheet in accordance with Magistrate Judge Anne Y. Shields' Individual Practice Rules on

March 20, 2018 (the "Worksheet") after the parties had conferred on the dates.  While the

Worksheet was not entered as a Scheduling Order by the Court after the Initial Scheduling

Conference, the parties proceeded to conduct discovery.  (Brecher Decl.at ¶¶ 5-6 ).  Frazer

submitted his First Request for Production ("RFP') to DDC on April 11, 2018. (Brecher Decl.at

Ex. C).  Frazer served his Second Request for Production of Documents ("RFP2") on April 25,

2018 (Brecher Decl.at Ex. D), well before the June 7, 2018 deadline to submit requests for

production of documents. (Brecher Decl.at Ex. B).  Pursuant to Fed. R. Civ. P. 34, DDC had

until May 11th and May 25$^{th,}$ respectively, to respond.  DDC requested multiple extensions to this

deadline (Brecher Decl.at ¶¶ 9-12) and did not submit its responses and objections to the RFP

and RFP2[1] along with a document production until June 4, 2018 (the "Production").

Frazer immediately reviewed the Production and came across several key documents

which he could not have known about prior to receiving the Production.  These documents

revealed the extensive role played by ILC in the issuance of what Frazer now learned were ILC

company shares, not shares in DDC as he thought and as Buffa had lead him to believe in their

negotiations in early 2015.  Frazer also learned for the first time that it was ILC's Board of

Directors, which according to an unsigned board resolution and an attached exhibit of a 2003

Equity Plan, Stock Option Grant Notice and Stock Option Agreement for Frazer (the "Stock

---

[1] DDC's responses and objections to RFP2, which contained only two additional requests,
referred Frazer to "Response No. 3, 6, and 7 to Defendant's Responses and Objections to
Plaintiff's First Set of Document Requests to Defendant." (Brecher Decl.at Ex. I).  DDC did not
produce any additional documents in response to RFP2. *See* (Brecher Decl. at Ex. H).

Option Grant"), ███████████████████████████████████████

███████████████████████████ (Brecher Decl.at Ex. J).[2] The Stock

Option Grant was to be executed by Frazer and William Riley ("Riley") the President and Chief

Financial Officer of ILC. (Brecher Decl.at Ex. J).

     The Production also contained an email on April 3, 2016 from Buffa to a representative

of Behrman, which confirmed that Frazer's ████████████████████████████

(Brecher Decl.at Ex. L). On June 20, 2016, Riley sent out a letter to addressed to "Option

Holder," informing the recipients that ILC had entered into a merger agreement with TDG and as

a result the █████████████████████████████████████

████████████████████████████████ (Brecher Decl.at Ex. K).

█████████████████████████████████████

█████████████████████████████████████

████████████████████████████

(Brecher Decl.at Ex. K).   Frazer never received or even heard of this letter prior to its production

in June 2018.

     The final two key documents are emails in October of 2016, after Frazer had resigned

from DDC, ██████████████████████████████████████ (Brecher

Decl.at Ex. M).  Finally, in a series of email between Christine Ortiz ("Ortiz"), DDC's Director

of Human Resources, and Riley on October 4, 2016, ████████████████████

█████████████████████████████████████

██████████████████████ (Brecher Decl.at Ex. N).

---

[2] The Stock Option Grant states that Frazer was granted ██████████████ (Brecher Decl. at Ex.
J). However, these shares are options as they were accompanied by an exercise price.

███████████████████████████████████████

███████████

Frazer recognized that these documents revealed new information not previously accessible to him and that he needed to amend the FAC in order to allege new causes of action under New York Labor Law and to join a new defendant ILC, whose extensive involvement was previously unknown.  Frazer, through his counsel, sought DDC's consent to amend the FAC via email on June 5, 2018, the day after receiving the Production, and he submitted a pre-motion letter seeking leave to move to amend the FAC on June 7, 2018. (Brecher Decl.¶¶ 21-22 ). DDC opposed this pre-motion letter and the Court held a pre-motion conference on June 19, 2018. The Court set a briefing schedule for Frazer's Motion for Leave to Amend the Complaint and placed a hold on all discovery. (Brecher Decl.at ¶ 24).

**C.  Frazer's Proposed Second Amended Complaint**

The proposed SAC contains new factual allegations uncovered in discovery and asserts new causes of action.  As detailed below, ████████████████████████████

███████████████████████████████████████

DDC's failure to pay these wages is a violation of New York Labor Law § 193.  ILC's involvement in DDC matters, including the compensation of one of DDC's employees, means that is liable under the "single integrated enterprise" doctrine for violation of New York Labor Law.  Likewise, ILC is also liable for the causes of action that Frazer previously asserted and which remained intact following the Court's order on DDC's motion to dismiss under Delaware's alter ego liability doctrine.  The proposed SAC is attached to the Brecher Declaration as Exhibit P.

## ARGUMENT

It is well-settled that under Fed. R. Civ. P. 15(a)(2), leave by the court to amend the party's pleading "shall be freely given as justice so requires." Fed. R. Civ. P. 15 (a). However, when a party moves to amend the pleadings after the deadline to do so in the court's scheduling order has passed, she must first satisfy the good cause requirement of Fed. R. Civ. P. 16(b). *Parker v. Columbia Pictures Industries*, 204 F.3d 326, 339-40 (2d Cir. 2000); *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 117 (E.D.N.Y. 2011) ("The motion must be considered under both Federal Rules 15 and 16 because the motion was made after the deadlines for such motions had passed.").   If the court determines that the party seeking an amendment has demonstrated good cause, the determination then shifts to whether the plaintiff satisfies the requirements of Rule 15. *Lincoln v. Potter*, 418 F.Supp.2d 443, 453-55 (S.D.N.Y. 2006). *Joinnides v. Floral Park-Bellerose Union Sch. Dist*., 2015 WL 1476422, at *15 (E.D.N.Y. Mar. 31, 2015) ("If the party seeking the amendment satisfies the "good cause" standard of Rule 16(b), the court then determines whether the movant also meets the liberal standards of Rule 15(a).").

The Second Circuit has held that a Rule 15(a) motion should be denied only because of bad faith, undue delay, futility, and prejudice to the nonmoving party. *Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 603-04 (2d Cir. 2005).  Frazer's proposed SAC also includes the addition of ILC as a party.  "When a proposed amendment seeks to add an additional party, Federal Rule of Civil Procedure 21, which allows for the addition of a new party "at any time, on just terms," is also implicated….the showing necessary under Rule 21 is the same as that required under Rule 15(a)," *Raji v. Societe Generale Americas Sec. LLC*,  2016 WL 354033, at *2 (S.D.N.Y. Jan. 21, 2016) (citations and quotations omitted) ; *Salomon v.*

6

*Adderley Indus., Inc.*, 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013) ("This liberal standard is the same as that under Rule 15(a).")

    As set forth below, because Frazer has established good cause under both Rules 16 and Rule 15, the Court should grant his motion for leave to amend.

**A.  Frazer Has Shown Good Cause to Amend the Complaint**

    Whether good cause exists under Rule 16(b) depends on the "the "diligence of the moving party." *Parker*, 204 F.3d at 340. To show good cause, "the movant must demonstrate that it is has been diligent in its effort to meet the Court's deadlines." *Chrebet v. Cty. of Nassau*, 2014 WL 1836835, at *11 (E.D.N.Y. May 8, 2014).  As described above, due to the Defendant's repeated requests to extend the time to answer Frazer's RFP and RFP2, Frazer did not receive any of the Production until June 4, 2018, after the May 23, 2018 deadline for amending the pleadings in the Worksheet.  Frazer diligently reviewed the Production and the day after receiving the Production notified DDC's counsel of his intention to amend the FAC.  Frazer's review of the Production revealed the extensive involvement of ILC and ████████████

██████████████████████████████████████████

██████ (Brecher Decl.at Ex. J). ██████████████████████████

██████████████████(Brecher Decl.at Ex. J). None of this was known or knowable to Frazer during his time at DDC so it could not have been included in his initial complaint or the FAC.  This new information uncovered during discovery necessitates an amendment to the FAC.

    This court has acknowledged "discovery often justifies a subsequent amendment to the complaint." *Assam v. Deer Park Spring Water, Inc.*, 163 F.R.D. 400, 406 (E.D.N.Y. 1995).  In *Friedl. v. City of New York*, 210 F.3d 79, 87 (2d Cir. 2000), the Second Circuit reversed the District Court's denial for leave to amend the complaint.   The Court directed the District Court

to permit the plaintiff to amend the complaint despite the fact that the deadline for amendments has passed because "plaintiff moved to amend his complaint based on information acquired during depositions and other discovery," noting that "there has been no showing of either undue delay, given that the amendment was proposed only after discovery revealed additional relevant facts. . . ."). In *Samad Bros. v. Bokara Rug Co.*, 2010 WL 2835754, at *3 (S.D.N.Y. June 30, 2010), the Court found that the plaintiff "acted diligently in moving to amend its complaint anew, after receiving, during the discovery phase of the litigation, additional relevant information from the defendants…it did not possess previously, that provided [the plaintiff] grounds for seeking to amend its complaint." In *Joinnides v. Floral Park-Bellerose Union Sch. Dist*, 2015 WL 1476422 (E.D.N.Y. Mar. 31, 2015), the plaintiff sought to amend the complaint citing evidence uncovered during a deposition. The plaintiff did not move to amend the complaint until three months after the deposition was held, which was six months after the deadline to amend and when discovery was nearly closed. The Court found that "although Plaintiff has not been the most diligent in seeking leave to amend her Complaint, she has demonstrated the requisite 'good cause' to modify the scheduling order…the Court agrees that Plaintiff's proposed amendments are based upon information which came to light during Plaintiff's deposition of Superintendent Opiekun." *Id* at 11.

New York courts have found good cause for leave to amend under Rule 16(b) even when discovery has been completed entirely. *See* Q*uattrone v. Erie 2 Chautauqua-Cattaraugus Bd. of Co-op. Educational Services*, 2011 WL 294496, at *4 (W.D.N.Y. 2011) (granting motion to amend following completion of discovery where deposition testimony revealed facts supporting additional claims.); *Lincoln v. Potter*, 418 F.Supp.2d 443, 454-55 (S.D.N.Y. 2006) (granting plaintiffs motion to amend under Rule 16, after deadline in scheduling order passed and

discovery was closed.); *Hampton Bays Connections, Inc. v. Duffy*, 212 F.R.D. 119 (E.D.N.Y. 2003) (granting motion to amend complaint under Rule 16 despite completion of discovery where plaintiff obtained information supporting amendment in discovery.).

The parties here are in the early phase of discovery, which has been placed on hold by the Court pending the outcome of the instant motion.  No depositions have been held nor have any costly expert reports been exchanged. Frazer reviewed the Production immediately and began the process of seeking leave to amend the FAC the following day.  Frazer has been diligent in his obligation to proceed quickly with litigation.  He could not have met the deadline for amending the pleadings after courteously granting DDC several requests to extend the statutory deadline to respond to his requests for production.  Frazer has established good cause under Rule 16.

### B.  DDC Cannot Show Prejudice, Bad Faith, or Futility

#### 1.  Frazer Has Acted in Good Faith and Moved to Amend the Complaint Rapidly

As recounted above, Frazer moved swiftly to obtain leave to amend the FAC after reviewing the Production.  The delay in the Production, which prevented Frazer from reviewing the discovered documents prior to the amendment deadline, was as a result of DDC's repeated requests for extensions of time to respond which Frazer granted as a courtesy.  Frazer could not have known about the documents and the underlying information therein prior to reviewing the Production.  Few courts have denied leave to amend on the basis of bad faith. *Oneida Indian Nation of New York State v. County of Oneida*, 199 F.R.D. 61, 80 (N.D.N.Y. 2000).  As the *Oneida* court discussed, a finding of bad faith requires "something more than mere delay" *Id*. (citing *Primetime 24 Joint Venture and Primetime 24 Relay Corporation v. DirecTV, Inc.*, 2000 WL 426396, at *5 (S.D.N.Y. April 20, 2000)).  Courts have found bad faith when the movant was solely seeking to gain a tactical advantage.  *See State Trading v. Assuranceforeningen Skuld*,

921 F.2d 409, 417–18 (2d Cir.1990), where the Second Circuit found bad faith when the plaintiff

deliberately waited to amend the complaint to include foreign-law based causes of action to

decrease the chance of dismissal under forum selection clause or *forum non conveniens* grounds.

Frazer has not engaged in any such underhanded tactical maneuvers here and is acting in

good faith.

### 2. Allowing Frazer Amend the Complaint Would Not Cause Undue Delay or Unfairly Prejudice DDC

The Second Circuit has "held repeatedly that 'mere delay' is not, of itself, sufficient to

justify denial of a Rule 15(a) motion." *Parker*, 204 F.3d at 339.  The FAC was filed on April 6,

2017, and Frazer sought leave to amend almost exactly 14 months after the FAC was filed.

Courts in this Circuit have permitted amendments to the pleadings multiple years after the

operative complaint was filed.  See *Rachman Bag Co. v. Liberty Mut. Ins. Co*., 46 F.3d 230, 235

(2d Cir. 1995) (allowing amendment four years after complaint was filed.); *Joinnides v. Floral

Park-Bellerose Union Sch. Dist*., 2015 WL 1476422 (E.D.N.Y. Mar. 31, 2015) (granting leave to

amend complaint to include new information revealed during discovery 18 months after plaintiff

filed the complaint).

Frazer moved for leave to file a motion to amend the FAC mere days after having

received the Production and discovered the facts underlying the new allegations and supporting

the New York labor law claim and the joining of ILC.   Courts have permitted parties to amend

their pleadings even when there is a substantial delay between the discovery of the new

information and the motion for leave to amend.  *See Richardson v. Greenshields Securities, Inc.

v. Lau*, 825 F.2d 647, 653 (2d Cir. 1987) ("parties ... have been permitted to amend their

pleadings long after they acquired the facts necessary to support those claims."); *Securities and

Exchange Commission v. PCI Telecommunications, Inc.*, 207 F.R.D. 32, 34 (S.D.N.Y. 2002)

(granting plaintiff's motion to amend following four month delay after plaintiff obtained discovery supporting basis for amendment.); *Assam v. Deer Park Spring Water, Inc.*, 63 F.R.D. 400, 406 (E.D.N.Y. 1995) (granting motion to a amend, noting "while the plaintiffs delayed for three months, such delay did not appear excessive since the facts as first brought to plaintiffs attention were drawn from the depositions of defendant's witness taken only three months before."); *See Joinnides*, 2015 WL 1476422  at *13 (granting leave to amend the complaint when the underlying facts supporting the amendments were discovered three months before the motion for leave to amend was filed).

DDC is also not prejudiced in any way by Frazer's proposed amendments to the FAC. Discovery is only in the initial phase and depositions have not even been scheduled. (Brecher Decl.at ¶ 25).  In order to determine whether the non-moving party may be prejudiced courts may "consider whether the assertion of the new claim would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir.1993).  Courts are more reluctant to grant leave to amend when the parties have "already completed discovery and the defendant has moved for summary judgment." *Werking v. Andrews,* 526 Fed. Appx. 94, 96 (2d. Cir.2013)  (internal citations omitted); *See Grochowski v. Phoenix Constr.,* 318 F.3d 80, 86 (2d Cir.2003) ("[W]hen the motion was filed, discovery had been completed and a summary judgment motion was pending. On this record we cannot say that the district court abused its discretion in denying the plaintiffs' motion to amend").[3]  Also, the addition of new parties is not

---

[3] But note that that the necessity to conduct additional discovery on its own does not constitute undue prejudice. *See Bridgeport Music Inc. v. UMG Recordings. Inc.*. 2008 WL 113672, at *3 (S.D.N.Y. Jan. 10, 2008) ("it is well settled that allegations that an amendment will require the

11

sufficient to prejudice DDC when as is this case here, "[n]o trial date has yet been set, nor has discovery been completed" and the new allegations are related to the events alleged in the original complaint. *A.V. by Versace, Inc. v. Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000).

Frazer's amendments relate to his claims of the unpaid options he was contractually promised in his Employment Contract executed by ILC's subsidiary, DDC.  In *UMG Recordings, Inc. v. Lindor*, 2006 WL 3335048 (E.D.N.Y. Nov. 9, 2006) the Court rejected the argument that permitting an amendment, which would require new discovery on the movant's affirmative defense, would prejudice the plaintiff. "[T]he burden of undertaking discovery, which [the opposing party] would have shouldered had the proposed amendment been incorporated in the complaint as originally filed, hardly amounts to prejudice outweighing the policy of Rule 15(a) in favor of permitting the parties to obtain an adjudication of the merits." *Id* at *4 (quoting *S.S. Silberblatt, Inc. v. East Harlem Pilot Block-Bldg. 1 Hous. Dev. Fund. Co.,Inc.*, 608 F.2d 28, 43 (2d Cir. 1979).  Frazer's amended claims, supported by the new information obtained through discovery, are robust and deserve to be heard on the merits.

### 3.   Frazer's Amendments to the FAC Are Not Futile

Frazer's additional claim against DDC under the New York Labor Law and the inclusion of ILC as a defendant both under the "single integrated enterprise" doctrine and under alter ego liability are well supported by the applicable case law.   The standard to determine whether the proposed amendments to a pleading are futile are lenient in favor of the movant.  "A proposed

---

expenditure of some additional time, effort, or money do not constitute undue prejudice."); *Cummings-Fowler v. Suffolk County Community College*, 282 F.R.D. 292, 297 (E.D.N.Y. 2012) ("[T]he adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading.") (quoting *United States v. Continental Ill. Nat'l Bank & Trust of Chicago*, 889 F.2d 1248, 1255 (2d Cir. 1989)).

amendment to a pleading is deemed to be futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis." *Yin v. N. Shore LIJ Health Sys.,* 20 F.Supp.3d 359, 366 (E.D.N.Y.2014) (quoting *Kirk v. Heppt,* 423 F.Supp.2d 147, 149 (2d Cir.2006). This Court has held that unless "a proposed amendment is clearly frivolous or legally insufficient on its face ... the substantive merits of a claim or defense should not be considered in a motion to amend… Ultimately, a plaintiff need only allege enough facts to state a claim to relief that is plausible on its face." *Joinnides*, 2015 WL 1476422 at *15.

### a. New York Labor Law § 193

Under § 193 the New York Labor Law, "No employer shall make **_any_** deduction from the wages of an employee…," (emphasis added) absent authorization as specifically set forth in that section of the statute, none of which provisions are applicable here. Wages are defined as "the earnings of an employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis." N.Y. Labor Law § 190(1) DDC argued in its pre-motion letter that "there is no authority for the proposition that stock options are considered 'wages' for the purposes of New York Labor Law." (DE 42). However, *Beach v. HSBC Bank USA, N.A.*, 2017 WL 5633162, at *1 (S.D.N.Y. Nov. 20, 2017), which DDC cited in support of its position, cites *Locke v. Tom James Co.*, 2013 WL 1340841 (S.D.N.Y. Mar. 25, 2013) and acknowledged that *Locke "*recognized that stock options may be considered wages under the Labor Law." There is no blanket prohibition against equity awards being considered wages under New York Labor Law.

As the Court in *Beach* noted, the difference between the unvested stock at issue in that case and the stock options in *Locke* was that the *Locke* options were granted based on the plaintiff's performance. The *Locke* court expressly held that "to the extent that Locke earned the

13

options through his own performance and pursuant to the compensation plan for that year, Locke is entitled to those stock options as wages" *Locke,* 2013 WL 1340841 at *6.  By the terms of the Employment Contract here, Frazer was "entitled to company options. *Based on your performance*, and the approval of the Board of Directors, DDC will issue up to a maximum of 200,000 shares after six months of your start date."  (FAC ¶ 19) (emphasis added).   That is, the award of options to Frazer was expressly recognized in the Employment Contract as dependent on his own performance. No other factors, such as DDC's performance, were listed. Based on Frazer's performance, ███████████████████████████████████████ (Brecher Decl. at Ex. J).  This was confirmed in the April 3, 2016 email written by Buffa to ILC's owner Behrman, ████████████████████████████████ ██████████████████████████████ (Brecher Decl. at Ex. L).   As such, the options in the Employment Contract were "Wages" under the NYLL, since their award was dependent on his own performance.

███████████████████████████ can also be considered wages even if the options are considered incentive compensation because, ███████████████████████████ ██████████████████████████████████████████████ ███████████████████████████████████ ████████████ "Typically, the term wages does not include bonuses, profit-sharing, and other forms of incentive compensation unless the incentive compensation is already 'earned' by the employee." *See Truelove v. Northeast Capital & Advisory, Inc.,* 95 N.Y.2d 220, 223–24 (2000); *Dean Witter Reynolds, Inc. v. Ross,* 75 A.D.2d 373, 381 (1st Dep't 1980).  ***An employee's incentive compensation is 'earned' when the employee acquires a vested interest in the award and its payment is not conditioned upon some occurrence or left to the discretion of***

14

*the employer*. Bonuses and similar incentive compensation generally become vested by contract or by the awarding of a specified amount." *Aledia v. HSH Nordbank AG*, 2009 WL 855951, *2-3 (S.D.N.Y. Mar. 25, 2009) (emphasis added); *Tuttle v. George McQuesten Co. Inc.,* 227 AD2d 754, 756 (3d Dep't 1996) ("pursuant to the terms of the parties' agreement, plaintiff had a vested right to the [incentive compensation] at the time of his resignation . . . Upholding a forfeiture thereof would be violative of public policy"). *Ryan v. Kellogg Partners Institutional Services*, 968 N.E.2d 947, 956 (2012) (the New York Court of Appeals held that neglecting to pay a nondiscretionary bonus violated NYLL § 193); *Kolchins v. Evolution Markets, Inc.*, 31 N.Y.3d 100, 109 (2018) (the New York Court of Appeals held that the defendant had not established that the plaintiff's production bonus was not vested and earned and therefore was owed as wages under NYLL § 193, regardless of a contractual provision stating that the plaintiff had to be employed to receive production bonuses).

Frazer should be permitted to amend the FAC to include a claim for a violation of New York Labor Law § 193. ███████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

███████████████████████ Frazer never received this award or the cash compensation as his earned and due wages. As such, has a viable claim under the NYLL, which is supported by documents DDC produced in discovery and which contained information that was previously unknown to Frazer.

### b.  Addition of ILC as a Party

ILC can be held liable for the above-described violation of NYLL § 193 under the "single integrated enterprise" doctrine.   Under this doctrine, which is also known as the joint enterprise doctrine, "a single employer situation exists where two nominally separate entities are actually

part of a single integrated enterprise. Furthermore, where a joint enterprise exists, courts may impose liability for an NYLL violation not only on the nominal employer but also on another entity comprising part of the single integrated employer*." Gyalpo v. Holbrook Dev. Corp.*, 577 B.R. 629, 640 (E.D.N.Y. 2017) (citations and quotations omitted). In *Avelar v. Ed Quiros*, Inc., 2015 WL 1247102, at *4 (E.D.N.Y. Mar. 18, 2015) the plaintiff sought to hold the two defendant corporations liable for a violation of NYLL § 193.  The Court stated that in order to establish a joint enterprise, "the three main elements of the statutory definition of 'enterprise': related activities, unified operation or common control, and common business purpose." The Second Circuit has held that examples of corporations acting as a single integrated enterprise include "*parent and wholly-owned subsidiary corporations*, or separate corporations under common ownership and management." *Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (emphasis added).

Additionally, the issue of whether ILC can be considered Frazer's employer is a fact-specific inquiry. In *Addison v. Reitman Blacktop, Inc.,* 283 F.R.D. 74, 84 (E.D.N.Y. 2011), this Court held that  "on a motion to dismiss, and therefore a motion to amend futility analysis, the relevant inquiry is whether the defendant has been put on notice of the theory of employer liability." The Court determined that because the plaintiffs had alleged upon information and belief in the proposed amended complaint that the "Defendants formed a 'single integrated enterprise' as they shared common management, finances and/or other resources" the plaintiffs had put the defendants on notice. *Id*.   Therefore, "it would not be futile to permit them to amend the complaint to assert claims against [the additional defendants]." *Id*.   In Frazer's proposed SAC, he has alleged that, "ILC, as DDC's parent, and DDC, were a single integrated employer. ILC determined that Frazer was entitled to the options delineated in the Employment Contract

and in fact called Frazer an ILC "employee" in an unsigned board resolution granting the

options." (Brecher Decl., Ex. P. at ¶ 83). Frazer also alleged that ILC and DDC had an overlap

of officers, specifically Riley.   (Brecher Decl., Ex. P. at ¶ 46). As such Frazer has demonstrated

that seeking to add ILC as a party and to hold it liable under New York Labor Law is not futile.

Likewise, holding ILC liable for the breach of Frazer's Employment Contract or via

quantum meruit or unjust enrichment under a theory of alter ego liability survives the Rule 15(a)

futility analysis.   As an initial matter, the applicable law that the Court should apply to disregard

ILC and DDC's corporate form is the law of the state of their incorporation, Delaware.  "The

choice-of-law analysis is straightforward with respect to Plaintiff's alter-ego/veil-piercing theory

of liability. Under New York choice of law principles, the law of the state of incorporation

determines when the corporate form will be disregarded, and liability will be imposed." *Nat'l*

*Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 975 F. Supp. 2d 392, 401 (S.D.N.Y. 2013)

(citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir.1995)). In *Cummins Power*, the

plaintiff sought disregard the subsidiary company's corporate form and hold the parent company

liable. The subsidiary was a Delaware-based corporation so the Court applied Delaware law. *See*

*Id.*

Under Delaware law, Courts may "pierce the corporate veil only 'where there is fraud' or

"where [the corporation] is in fact a mere instrumentality or alter ego of its owner." *NetJets*

*Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008) (quoting *Geyer v.*

*Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992)). In order to establish liability under

alter liability a party much demonstrate that

> (i) the entities in question operated as a single economic entity, and (ii) there is an
> overall element of injustice or unfairness. Factors relevant to the first, single-
> economic-entity showing include whether the corporation was adequately
> capitalized for the corporate undertaking; whether the corporation was solvent;

17

> whether dividends were paid, corporate records kept, officers and directors functioned properly, and other corporate formalities were observed; whether the dominant shareholder siphoned corporate funds; and whether, in general, the corporation simply functioned as a facade for the dominant shareholder.

*A.V.E.L.A., Inc. v. Estate of Marilyn Monroe, LLC*, 2018 WL 1273343, at *4 (S.D.N.Y. Mar. 5, 2018) (citations and quotations omitted); *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1458 (2d Cir. 1995).   These factors are not dispositive, however, and "a [p]laintiff may survive a motion to dismiss by pleading other relevant allegations regarding the parent's complete domination." *Cummins Power*, 975 F. Supp. 2d at 403.

As was the case with the single enterprise doctrine, courts will look to see if the proposed pleading gives the non-movant "fair notice of what the claim is and the grounds upon which it rests" in order to find the movant has satisfied the futility analysis. *Trustees of Laborers Union Local No. 1298 of Nassau & Suffolk Ctys. Ben. Funds v. A to E, Inc.*, 64 F. Supp. 3d 435, 441 (E.D.N.Y. 2014); In *Sullivan ex rel. Pointer, Cleaners & Caulkers Welfare Pension & Annuity Funds v. W. New York Residential, Inc.*, 2003 WL 21056888 (E.D.N.Y. Mar. 5, 2003), the plaintiff sought to amend the complaint to hold the defendant liable under alter ego liability.  The Court held that an "amendment is futile only if movants cannot demonstrate "at least colorable grounds for relief…In considering whether two enterprises are alter egos, the courts consider whether they have substantially identical management, business purpose, operation, equipment, customers, supervision and ownership." *Id* at *2.  The Court held that the plaintiff had submitted supportive facts suggesting that "some of these conditions are satisfied here. Discovery may reveal that others are satisfied as well." *Id*.

Frazer has demonstrated that ILC and DDC share common management, through Riley,

a▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

�â–ˆâ–ˆâ–ˆâ–ˆâ–ˆFrazer should be permitted to amend his complaint and conduct discovery to determine the full extent of ILC's domination of DDC.

## CONCLUSION

Based on the foregoing, Frazer's Motion to Amend the Complaint should be granted in its entirety.

Dated New York, New York
     July 9, 2018

Respectfully submitted,

/s/ Ethan A. Brecher
**ETHAN A. BRECHER (EB 3425)**
Law Office of Ethan A. Brecher, LLC
600 Third Avenue, 2nd Floor
New York, NY 10016
Phone: (646) 571-2440
Fax: (888) 821-0246
Email: ethan@ethanbrecherlaw.com

*Attorney for Charles Frazer*